Edie Cunningham on behalf of Ms. Martinez, Agent Sally stopped the car merely because it was registered in Eloy and made a quick turnaround in Meninger's Dam, which was a known smuggling area. There simply weren't enough factors here to, in combination, amount to reasonable suspicion. JUSTICE BREYER. Is that the only factor, though, that we look at? Can't we look at some other aspects of what was going on? MS. MARTINEZ. Well, Your Honor, that was really the — those were the only suspicious factors. It certainly wasn't a known smuggling area. JUSTICE BREYER. This wasn't like, you know, going down, you know, Washington Boulevard and then turning around. This was a very unusual area, a remote area, that not a lot of outsiders would go to. And isn't that something that we can take into account in — together with all the other circumstances? MS. MARTINEZ. Your Honor, that's one factor to be considered, but we have to remember that this is an area where hundreds of Tohono O'odham members live, and a substantial majority, 20,000 out of 30,000 TO members, do not live on the reservation. It is very common to have family members from other parts of the state, including Eloy, where I believe Ms. Martinez was born, but TO members live there, visit these remote villages. These are close-knit families. And just as families — for example, my family, we would drop off grandkids at a grandmother's house in Phoenix and turn around and come right back. Those TO members have a right to drive down to their relative's house for whatever reason, to take an elderly — JUSTICE BREYER. What is your response to the assertion that you're taking a divide-and-conquer approach here, which is not permitted in this circuit? MS. MARTINEZ. Well, Your Honor — and I understand that. There's simply not enough to divide and conquer here. And in rereading Arvizu yesterday, it really does comport with what the majority says in Regoza Garcia, which is that oftentimes in isolation, a factor will have a quite plausible, innocent explanation. But when you put it all together, there's just not a plausible, innocent explanation. That's what happened in Terry. Sotomayor. But Arvizu specifically says that you, for reasonable suspicion, you don't have to rule out the possibility of innocent conduct. MS. MARTINEZ. No. You don't have to. Sotomayor. The fact that there is an innocent explanation, could have been dropping off a grandchild, isn't — doesn't mean the standard's not met. MS. MARTINEZ. Well, Your Honor, I think what it means, and I definitely know that what the majority in Regoza Garcia meant, which is a Ninth Circuit case, was that when you look at everything together and there's still a perfectly plausible explanation for it, then that's simply not enough. And I have read a lot of cases. I'm sure the Court has as well. I have never seen a case in which reasonable suspicion, the basis for it, was so thin. In Regoza — JUSTICE SOTOMAYOR. What do we do with the officer's statement that because the community was so small and he had been servicing that community for so long, that he was familiar with the residents, the vehicles that were driven there, and so he was able to determine when that vehicle was there that generally didn't come there? What do we do with that statement? MS. MARTINEZ. Well, Your Honor, I would say that — I would — I would say that he's not going to be familiar with the vehicles of the friends and family members who live off the reservation. And given the numbers, given the fact that a substantial majority of T.O. members do live in places like Eloy and Tucson and Phoenix, that he's — JUSTICE SOTOMAYOR. He said exactly that. He is familiar with the vehicle traffic that comes through there. MS. MARTINEZ. Well, what if a family member has gotten a new car or has borrowed a car? I mean, you can't — he simply cannot be familiar with any vehicle that has a legitimate reason to visit. I mean, people have lots of family and friends. So he wouldn't — he wouldn't be familiar with family members' vehicles who are coming to visit, coming to drop off a child, bringing something there. JUSTICE SOTOMAYOR. Counsel, that in conjunction with the fact that he stated that this was a place where drug smuggling and people smuggling was known to occur, that coupled with the fact that the car was unfamiliar and did — and the way it turned around, why wouldn't that be enough? Reasonable suspicion is not a high level required. So why wouldn't that be enough, the combination? MS. MARTINEZ. Well, I understand, Your Honor, but it's got to mean something, as this Court said in Rigozo-Garcia. And if this stands, it means nothing. And as I said, what it — what it does mean is that T.O. members who have friends and family among the hundreds of people who live down in that area are not going to be able to go down there without — JUSTICE ALITO. A quick turnaround. MS. MARTINEZ. Well, they're not going — JUSTICE ALITO. They can go down there for a longer time. MS. MARTINEZ. Well, yeah. They'll have to — they'll have to know that they need to stay for at least two hours or however long it would be. And so that really burdens their privacy and association rights in an inappropriate way. And as I said, I just am aware of no case where there's been such thin, reasonable suspicion. Sotomayor. How close is this town, Meninger and Stam, to the — to the border? MS. MARTINEZ. Only a couple of miles, Your Honor. Yeah. Sotomayor. I thought it was a half-mile, actually. MS. MARTINEZ. Well, maybe. Maybe a half-mile. It's very close to the border. I'm not going to disagree with you on that, and I'm not going to disagree that there's smuggling that occurs there. But the Court should be mindful that these are our tribal citizens who — who should not be burdened in this way. And law enforcement — an important point to make is that law enforcement isn't hamstrung here. All one of those officers needed to do was follow that car, and two things would have happened. I mean, that's — they could have done that, but did the reasonable suspicion standard require them to do that? MS. MARTINEZ. I think it did, Your Honor, because it would have developed that suspicion easily. It would have thwarted the crime, or they would have seen something suspicious. And in every other case — in Arvizu, the officer followed the car. In Regosa, Garcia. In Valdez, Vega, the officers followed the car to see what was up. And in the Carmen case, which is unpublished and non-precedential, but I do believe it occurred in the very same area, that's what the officer did. They followed the car. The car started, you know, appearing to try to evade, and so they stopped it. They had reasonable suspicion. Also in the Carmen case, that was late at night, I think at 10.30, not at a time when people would be visiting, and it was a rental car. So there were other suspicious factors as well. But this is not — you know, law enforcement just didn't do enough. And it wasn't as though they had a lot of other things to do. They had two officers on that road. It's really puzzling why one of them didn't just follow that car and see what was up. And I'll reserve the rest of my time. MS. ELLIS. Thank you, Counsel. MS. MARTINEZ. Thank you. MS. ELLIS. Good morning, Your Honors. May it please the Court. My name is Ashley Enderly and I represent the United States. This Court should affirm the district court's order finding that reasonable suspicion existed for Agent Salih to stop the defendant's vehicle. The stop was based on the totality of the circumstances, which, among other factors that I'll discuss more in detail shortly, involved a nonlocal vehicle traveling down a rural highway to a remote village for all intents and purposes that was on the border a half a mile away that made a quick turnaround and returned up that rural road. And, Your Honors, I want to discuss the divide-and-conquer analysis that the defense continues to implore the Court to do. Although she says that is not the correct standard, and it is not, by saying that each one of these factors could be attributed to an innocent explanation or by saying that this factor doesn't have any weight or this factor doesn't have any weight, she is asking you to conduct a divide-and-conquer analysis. And that is contrary to Supreme Court precedent in our v-sue and the Ninth Circuit precedent on the reasonable suspicion cases post our v-sue. This Court has to look at the whole picture in light of a very experienced officer's training and experience. One of the most substantial factors here is the area in which this vehicle was traveling towards. Managers Dam is a half a mile from the border. It's essentially on the border. It is known by Border Patrol agents to be a high-traffic area for drug and alien smuggling. It's located on a portion of the border where there is no border wall, only vehicle bollards. And Agent Salih had personally apprehended drugs or illegal aliens in almost every building in Managers Dam. I mean, her point is basically every vehicle that isn't local that drives into this town and turns around essentially can be stopped. That's not correct, Your Honor. All of the facts in this case, you have to look at the whole picture, and there's more there. It was a non-local vehicle, but Agent Salih had personally come to know most of the local traffic. Between all three villages on FR1, which is a 30-mile stretch of poor roadway, only one lane in each direction, there's only four to five hundred people between all three of those vehicles. He's come to recognize not only the vehicles that travel that road, but also the names of the residents. How many years did he work in that area? He worked in the area 17 years, but the past four years exclusively along FR1. So he knows the local residents, and he knows the local vehicles. Now, while the defendant was a member of the Tohono O'odham Nation, she was not driving a vehicle registered to her, and the vehicle was registered in Eloy 100 miles away, which Officer Salih recognized Eloy to be a transshipment center for alien and drug smuggling. Additionally, I would point the Court to ER99 when Agent Salih is discussing his body cam video, and that during the entire stop from pulling the vehicle over through processing all of the individuals found in the vehicle to transporting them away, that entire time only one vehicle in either direction passed on the roadway. So it's not a heavily traveled roadway, and it is reasonable that somebody who has worked the area for that long would recognize the local traffic, even visitors. The vehicle was also traveling at sunset, which the District Court correctly noted would obscure visitors from seeing local tourist sites, if any existed. On that note, Managers Dam itself has no areas for the public, in that it has no restaurants, no gas stations, no grocery stores, no shopping or retail stores, nothing. In addition to traveling at sunset, or another factor about it traveling at sunset, as Agent video on Managers Dam turns and faces away from the village because of the glare on the camera from sunset. And then the factor that, well, not most heavily, but is heavily considered by Agent Salih is that quick turnaround. This vehicle from out of the area is coming all the way down to this area known for human and drug smuggling, and staying for only a matter of minutes. Agent Salih knows that the buildings in this area are used for human and drug smuggling. He also knows that there's load up spots before the village. This vehicle was last observed by Agent Salih at, I'm sorry, Agent Olivas at around mile marker seven, and that's seven miles before Managers Dam. Agent Salih testified that there are several load up spots between that mile post and Managers Dam, where individuals will hide in the desert and then load up into a vehicle. The turnaround in this case was only a matter of minutes. Really not enough time to do anything substantial. And again, all these factors are viewed through the light of a highly experienced officer. Again, he had worked in the area for 17 years, exclusively for the last four years, interdicted drugs and undocumented non-citizens in almost every structure there. He knew the local traffic, he knew the local residents, he knew the local load up spots. Agent Salih reasonably believed that he was witnessing a smuggling attempt, and he was able to pull the vehicle over and further investigate, and his suspicions were confirmed. I would like to go to counsel's argument about Raygoza Garcia and the innocent factors. Raygoza Garcia doesn't stand for what the defense is saying it stands for. Raygoza Garcia specifically cites Valdez Vega and explains that even though individual acts may be innocent in themselves, taken together, they may warrant further investigation. It does not say that there has to be any non-innocent conduct. It does not say, or none of the case law on this issue says that an officer has to actually observe people or drugs load up into a vehicle. In fact, that would be much higher than what reasonable suspicion requires. They're almost getting to probable cause at that point if you're actually seeing the drugs or people load up into the vehicle. Raygoza Garcia holds that there's reasonable suspicion in that case, and the factors there are all innocent explanation factors as well. But taken together, it showed the agents in that case, or the officers in that case, that this was probably, that they had a reasonable suspicion to believe that it was a drug smuggling load. There were no non-innocent factors there. It was the totality of the innocent factors in the light of the agent's training and experience that showed reasonable suspicion existed. Not seeing a vehicle pick up people or drugs from the side of the roadway, that's analogous to the Tiong case cited in my brief. That the agents saw a vehicle go down Smuggler's Road, as it was notoriously called. They didn't follow the vehicle down Smuggler's Road. They saw it turn down Smuggler's Road, make a quick turnaround, and come back out. Along with all the circumstances of that area and the behavior of that driver, this court found that reasonable suspicion existed, even though nobody ever saw anything load up into that vehicle. And, Your Honors, I would argue that this case even has more than what's set forth in our v-sue. In our v-sue, we're talking about Douglas, which had 13,000 people, and the agent was still able to describe the facts and circumstances in that case that led him to believe that smuggling was afoot. In this case, we have four to 500 vehicles, or sorry, four to 500 residents in a very rural area on the border, a half a mile away from the border, with a quick turnaround, with it being registered over 100 miles away, the agent not recognizing the vehicle or the person, all of these, in light of the agent's training and experience, led him to believe that this was a smuggling attempt. If the court has no additional questions for me, I would conclude by, again, saying that the court must look at the whole picture here, the whole picture in light of the agent's training and experience, and give due weight, as our v-sue sets forth, to the factual inferences by resident judges and local law enforcement, and find that the district court correctly held that reasonable suspicion existed here. Thank you, Your Honors. Rebuttal. Your Honor, with regard to Ray Goza-Garcia, this is a quote from the concurring opinion, which included two judges, so it's binding. A stop may not be based on innocent conduct in and of itself. You have to look at the whole picture, and if the whole picture doesn't seem consistent with innocent conduct, then there's reasonable suspicion. But if the whole picture still seems consistent with innocent conduct, then that's not enough. And I think that's the principle that all of these cases stand for. The non-innocent conduct, which conceivably could have been innocent in Ray Goza-Garcia, was the burning of the cars, the crossing history, which could be innocent, but there are very few legitimate reasons for doing that, and the fact that there was a different driver who had come across the border that morning than the one who was driving the car. Again, could be innocent, but it would be really strange. In Terry, that's another good example. What happened in Terry could have been innocent, but it just wasn't plausibly innocent under the circumstances. Arvizu, I would suggest, is very different. That van was driving out on dirt, Forest Service roads where there were no populations. They weren't going to visit anyone, and it conspicuously avoided a checkpoint. There were the kids' knees that were up in the air and the mechanical waving and all kinds of things that were going on there. And if I didn't mention it before, Agent Sally was not just suspicious of cars from Eloy, he was suspicious of cars from anywhere else, Phoenix, Yuma, Tucson, Casa Grande. And as I mentioned before, these are places where many TO members live. Those people are not going to have cars that he recognizes. They're not going to have names that he recognizes necessarily. I mean, people get married, family, you know, he's not going to know the name of every family member or friend who is going down to visit the hundreds of people who live in those villages. Sally, neither Sally nor Olivas, and it was Sally who made the stop, cited the issue with the camera at Sunside as a reason for the stop. It was, that wasn't even explained until trial, and it wasn't explained by Sally, it was explained by Olivas as a reason why the cameras maybe didn't pick it up. But I would note that they also had radar down there which could pick up movements. That wasn't activated either. And in Tiong, there was much more at play, which I've explained in the briefing. All right, thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, COLLINS, Fitzwater